NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO L.S.

No. 1 CA-JV 26-0047

FILED 08-13-2026

Appeal from the Superior Court in Maricopa County
Nos. JD534635
JS521402
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Yu-Shan Kuo
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Angela K. Paton and Judge Michael J. Brown joined.

**B A I L E Y**, Judge:

¶1        Terrence S. ("Father") appeals the termination of his parental rights to L.S. ("Child").  Because the superior court properly found that termination was in Child's best interests and Father does not challenge the statutory grounds for termination, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Child was born to Chelsie R. ("Mother") and Father in 2021. In March 2022, the superior court ordered Mother to deliver Child into Department of Child Safety ("DCS") custody based on allegations that she engaged in criminal activity with Child present.  In June 2022, the court found Child dependent as to Mother based on Mother's substance abuse and criminal activity, and dependent as to Father due to his failure to provide proper parental care and to establish his paternity.[1]   DCS maintained custody of Child and placed her with a foster family.

¶3        After Father agreed in April 2022 to undergo paternity testing, the court allowed him weekly visitation with Child.[2]  Because of Father's inconsistent visitation attendance, his visits were changed to shorter twice-weekly visits.  DCS also required Father to call to confirm each scheduled visit.  Even so, some visits were cancelled because Child refused to see Father or Father failed to confirm his attendance.  When Father did visit Child, the visits generally went well, but problems arose at times when Father confronted the DCS employees about injuries that Child received while at school or in the placement's care.

¶4        The superior court ordered Father to drug-test following the initial dependency hearing.  Father tested positive for fentanyl and methamphetamine in March 2022 but refused further testing.  He also once brought a vial containing fentanyl to a visit.  DCS referred Father for substance-abuse treatment, but he did not engage with treatment or any other reunification service aside from visitation.

¶5        After Child had been in foster care for almost two years, DCS moved to terminate Father's parental rights on substance-abuse grounds, but withdrew its motion after a hearing and maintained a case plan for

_____

[1] The superior court terminated Mother's parental rights in November 2025. She is not a party to this appeal.

[2] For reasons not made clear in the record, Father did not complete paternity testing until 2024, and his paternity was not established until early 2025.

severance and adoption. Between May 2024 and April 2025, DCS several times moved unsuccessfully to terminate Father's parental rights.

**¶6** In July 2025, DCS again moved to terminate Father's rights on substance-abuse grounds under Arizona Revised Statutes ("A.R.S.") § 8-533(B)(3), and alleged Child had been in an out-of-home placement for longer than nine months and Father failed to remedy the circumstances causing the out-of-home placement under A.R.S. § 8-533(B)(8)(a). The superior court held a termination hearing in January 2026 and found that DCS established both grounds by clear and convincing evidence and proved by a preponderance of the evidence that termination was in Child's best interests. *See* A.R.S. § 8-533(B).

**¶7** Father timely appealed. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶8** To terminate parental rights, the superior court must find by clear and convincing evidence that a ground for termination exists under A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination serves the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018). On review, we must accept the superior court's factual findings provided they are supported by reasonable evidence and inferences. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). We do not reweigh the evidence; instead, we defer to the superior court's determinations on conflicting evidence and witness credibility. *Id.*; *Alma S.*, 245 Ariz. at 151, ¶ 18.

**¶9** Father argues that DCS failed to prove by a preponderance of the evidence that termination was in Child's best interests. Father does not raise, and therefore has waived, any challenge to the court's findings on either ground for termination under A.R.S. § 8-533(B). *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 1 (App. 2017).

**¶10** "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied," and the court's primary concern must be "the child's interest in stability and security." *Alma S.*, 245 Ariz. at 150, ¶ 13. In making this determination, the court should consider "the totality of the circumstances existing at the time of the severance." *Id.* Here, the superior court found that termination would benefit Child by furthering the case plan of adoption, "which would provide [Child] with permanency and stability in a loving home."

**¶11** Father contends the superior court erred by disregarding both the harm that would result from severing his existing relationship with Child and the injuries Child sustained while with the foster placement. Father's argument is unpersuasive. Reasonable evidence supports the court's finding that termination would benefit Child. The court heard testimony that Child is thriving in her current placement and that the placement is meeting her needs. The court also heard testimony about the benefits of permanency for a young child, and that Child is adoptable even if her current placement cannot adopt her. This evidence suffices to support the court's determination that terminating Father's parental rights so Child could be adopted would benefit Child. And Father's contention that the court should have given more weight to the strength of his relationship with Child and to Child's injuries amounts to a request to reweigh the evidence, which we will not do. *See Brionna J.*, 255 Ariz. at 478, ¶ 28.

**¶12** Father also argues that DCS had to present expert testimony on whether the immediate benefits of permanency outweighed the long-term harm caused by termination. As support, Father cites cases in which Arizona courts have required that expert testimony be presented to prove a claim, but none involve the termination of parental rights. And A.R.S. § 8-533 does not require either party to provide expert testimony to prove a child's best interests, and we will not read an additional requirement into the statute. *See In re M.N.*, 259 Ariz. 120, 125, ¶ 28 (2025).

**¶13** The court's finding that adoption would increase Child's stability and security was sufficient to establish that Child will benefit from termination and that termination is therefore in Child's best interests. *See Alma S.*, 245 Ariz. at 150, ¶ 13.

**CONCLUSION**

**¶14** We affirm.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**: JR

4